UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA DOLCH,

     Plaintiff,

v.                        Case No: 8:24-cv-1521-KKM-TGW

SIXTH JUDICIAL CIRCUIT,

     Defendant.

_____

## ORDER

Jessica Dolch sues the Sixth Judicial Circuit of Florida and alleges violations of the Florida Civil Rights Act (FCRA), the Family and Medical Leave Act (FMLA), and the Florida Whistleblower Act (FWA). *See* Sec. Am. Compl. (Doc. 14). The Sixth Circuit moves to dismiss Dolch's Second Amended Complaint. Motion to Dismiss (MTD) (Doc. 15); Sec. Am. Compl. For the reasons below, I grant in part and deny in part the motion.

## I.    BACKGROUND

Jessica Dolch began her tenure with the Sixth Circuit in 2014 as an employee in human resources. Sec. Am. Compl. ¶ 3. The Sixth Circuit initially hired Dolch

as a Human Resource Generalist and then "reclassified" her position to Human Resources Analyst II in October 2022. *Id.* ¶ 4. Dolch remained in that position until she resigned. *Id.* During her employment, she completed various training programs and attained several certifications. *Id.* ¶¶ 6–14.

In 2019, Dolch was diagnosed with Undifferentiated Connective Tissue Disease (lupus). *Id.* ¶¶ 15–16. She advised her supervisors of her diagnosis. *Id.* ¶ 16. The Sixth Circuit initially made certain accommodations for Dolch, including allowing her to work remotely three days a week and to take one day off per month for her lupus drug infusion treatment. *Id.* ¶¶ 17–18, 20. The Sixth Circuit also allowed Dolch to utilize remote work whenever she had lupus-related "flare ups." *Id.* ¶ 19.

In July 2023, the Sixth Circuit moved to a new annex, which did not have parking for the Human Resources Department. *Id.* ¶¶ 21–22. Because the summer heat negatively affected Dolch's lupus, she requested to park in the closer handicap parking space. *Id.* ¶ 23. The Sixth Circuit denied her request because the spot was reserved for another employee with a broken foot. *Id.* No further accommodation was made regarding the parking spot. *Id.* One day after walking from the parking lot to her office in the annex, Dolch fainted in her office. *Id.* ¶ 24.

2

After this episode, she asked security if something could be done to accommodate her because walking from the parking lot to the office had caused her to pass out. *Id.* ¶ 25. Because one of Dolch's immediate supervisors worked from home on Fridays, Dolch was told she could park in that spot on Fridays. *Id.* ¶ 26. But no accommodation was made for parking on Thursdays, the other day Dolch worked onsite. *Id.*

In 2023, a Human Resources Manager position became available. *Id.* ¶¶ 27–28. The Sixth Circuit advertised the position both internally and externally, though the usual practice had been to advertise it internally first. *Id.* ¶ 28. Dolch applied to the position and was given an interview, but the interview process "did not follow the guidelines in the handbook." *Id.* ¶¶ 29–30. Though the interview panel should have consisted of three interviewers, it only consisted of two, who were "in [a] supervisory position over her." *Id.* ¶¶ 29–30, 33. And although only one interview ordinarily occurs, two were arranged for Dolch, the second including a judge, which was unusual. *Id.* ¶ 31. Dolch expressed her concerns about these irregularities. *Id.* ¶ 32.

On September 6, 2023, prior to her second interview, Dolch sent the interviewers an email informing them that she had a lupus infusion treatment

scheduled for Friday, September 8, 2023, at 11 A.M., and that she would not work past 9:45 A.M. that morning to commute to the appointment. *Id.* ¶ 33. Dolch was informed after sending that email that her interview was scheduled for September 8, 2023, "during the time of her infusion." *Id.* ¶¶ 34, 60. A human resources analyst, Ms. Sprowell, informed Dolch that she had told the interviewers "that they were scheduling Plaintiff's second interview on the same day as her medical appointment." *Id.* ¶ 35.

Dolch thereafter withdrew her application from the manager position, stating in an email that "the disparate treatment was not worth having a toxic supervisor who could not make it any more obvious she does not like me, and did not want me in that role." *Id.* ¶ 36. Ms. Riyad, who was one of the interviewers and Dolch's immediate supervisor, told Dolch she should have said something if there was a problem with the interview date but did not offer Dolch an opportunity to interview at a different time. *Id.* ¶¶ 37, 39.

At some point after withdrawing her application, Dolch requested to go on intermittent FMLA leave to care for her husband and father. *Id.* ¶ 40. Her husband "needed surgery" and her father "came out of remission from cancer." *Id.* In response, her direct supervisor and the Trial Court Administrator told Dolch she needed "to

submit a set schedule she could work while out on intermittent leave." *Id.* ¶ 41. As

Dolch was uncertain of when her father and husband would need care, she could not

submit a set schedule and was therefore "forced to go out on full-time FMLA leave."

*Id.* ¶ 43.

Upon her return from FMLA leave, Dolch received "significant new job

duties." *Id.* ¶ 44. Some of these duties involved duties of the manager position for

which she had applied, and some duties were previously done by the assistant that

Dolch supervised. *Id.* These responsibilities "increased stress which exacerbated the

symptoms of [Dolch's] lupus." *Id.* ¶ 45. Also upon her return, the new Human

Resources Manager asked Dolch to record administrative leave as "free leave" since

he had not kept track of the leave, which Dolch refused to do, believing it to

"constitute[] fraud." *Id.* ¶ 46.

Dolch contacted the General Counsel of the Office of the State Court

Administrator (OSCA) about being asked to record leave incorrectly. *Id.* ¶ 47. The

General Counsel advised her to contact the Sixth Circuit Court Counsel, "out of

respect for the courts," instead of going to the Inspector General. *Id.* The Sixth

Circuit Court Counsel told Dolch the matter would be "handled in house" and not

to involve the Inspector General. *Id.*

Dolch resigned at some point after these events. *Id.* ¶ 4. After resigning, she submitted an "[Americans with Disabilities Act] grievance" to the OSCA and a charge to the EEOC, and then filed this lawsuit against the Sixth Circuit. *Id.* at 1–2, ¶ 48. The Sixth Circuit moves to dismiss. MTD.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But if an exhibit contradicts an allegation in the complaint, then the exhibit controls. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam) ("It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007))).

## III.   ANALYSIS

Dolch brings claims of disability discrimination and failure to accommodate under the FCRA, interference and retaliation under the FMLA, and retaliation under the FWA. *See generally* Sec. Am. Compl. Dolch alleges that the Sixth Circuit violated the FCRA's prohibition against disability discrimination by scheduling her

interview at the same time as her medical appointment. *Id.* ¶¶ 49–55. She claims that the Sixth Circuit also failed to accommodate her disability in violation of the FCRA by scheduling her interview at the same time as her medical appointment, *id.* ¶¶ 56–61, and by failing to provide her a more accessible parking space on Thursdays, *id.* ¶¶ 62–66. Dolch alleges that the Sixth Circuit interfered with her rights under the FMLA because she requested to go on intermittent leave but her supervisor required a set leave schedule. *Id.* ¶¶ 67–70. After she returned from taking FMLA leave, she alleges that the Sixth Circuit retaliated against her by revoking her unlimited VPN access and giving her new responsibilities. *Id.* ¶¶ 71–75. Lastly, Dolch alleges that the Sixth Circuit retaliated against her under the FWA because she reported allegedly incorrect timekeeping and then was constructively discharged. *Id.* ¶¶ 76–79.

The Sixth Circuit moves to dismiss each of these claims. First, the Sixth Circuit argues that Dolch failed to exhaust her administrative remedies under the FCRA and the FWA. MTD at 2–8. Second, the Sixth Circuit argues that Dolch fails to state a claim for each count. *Id.* at 8–25. I address the arguments in turn.

### A. Counts I & II: Disability Discrimination and Failure to Accommodate a Disability under the FCRA

#### 1.    Dolch Sufficiently Exhausted Administrative Remedies

The FCRA bars discrimination by an employer based on a host of characteristics, including a handicap,[1] *Delva v. Cont'l Grp., Inc.*, 137 So. 3d 371, 374 (Fla. 2014) (citing § 760.10, Fla. Stat.), and courts construe the FCRA as having the same meaning as the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101; *Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So. 2d 437, 440 (Fla. 4th DCA 2002).

Prior to filing a complaint of disability discrimination under the FCRA, the plaintiff must first exhaust her administrative remedies. § 760.07, Fla. Stat.; *see id.* § 760.11 (describing administrative scheme). "[A] complaint under [the FCRA] may be filed with the federal Equal Employment Opportunity Commission" "in lieu of filing . . . with the [Florida Commission on Human Relations (FCHR)]." *Id.* § 760.11(1).

The Sixth Circuit contends that, as a threshold matter for both FCRA claims, Dolch failed to exhaust her administrative remedies. MTD at 2–6. The Sixth Circuit

---

[1] The Sixth Circuit does not dispute that Dolch's lupus qualifies as a handicap for purposes of this claim.

argues that because Dolch's counsel requested a notice of right to sue early and the EEOC responded with a notice of right to sue and stated that "it will not be able to investigate and conciliate [Dolch's] charge within 180 days," Not. Right to Sue (Doc. 14-2) at 1, Dolch inadequately exhausted her administrative remedies, MTD at 2–6. Under binding caselaw, Dolch exhausted her claims.

Dolch exhausted her administrative remedies because she filed a charge of discrimination with the EEOC, (Doc. 14-1), and received a notice of her right to sue, *see* Not. Right to Sue. An early termination by the EEOC does not mean that a plaintiff has failed to exhaust her administrative remedies. In *Sims v. Trus Joist MacMillan*, the Eleventh Circuit concluded that the plaintiff exhausted administrative remedies before filing suit because the EEOC terminated the investigation early after determining that it could not complete the investigation within the 180-day period, thereby issuing a right to sue letter. 22 F.3d 1059, 1063 (11th Cir. 1994). Therefore, Dolch's early right to sue letter does not automatically render her exhaustion of administrative remedies insufficient.

Although acknowledging *Sims*, the Sixth Circuit argues that the charge should still be remanded for a "legitimate investigation" because the EEOC's determination was made only in response to Dolch's counsel's request. MTD at 6.

10

But *Sims* explained that it would be futile to remand a charge where the EEOC has "stated that it would be unable to act" on it, since Title VII "does not condition an individual's right to sue upon the EEOC's performance of its administrative duties." 22 F.3d at 1063 (quoting *Jefferson v. Peerless Pumps Hydrodynamic, Div. of FMC Corp.*, 456 F.2d 1359, 1361 (9th Cir. 1972)).[2]

The Sixth Circuit does not specify on what basis it challenges the EEOC decision, nor does it cite binding authority. MTD at 5–6 (citing *Deas v. Volunteers of Am.*, 98 F. Supp. 2d 464, 466 (S.D.N.Y. 2000) (remanding to the EEOC because the EEOC's determination that it could not timely investigate was a "sham" but without itself citing any authority for that proposition)). And in any event, the fact that the EEOC issued the letter only about a month after Dolch filed her charge does not make it "clear," as the Sixth Circuit argues, "that the reason for termination of [the] investigation" was that Dolch requested the letter. MTD at 5; *see Sims*, 22 F.3d at 1060, 1063 (declining to remand to the EEOC for an investigation when

---

[2] The Florida Supreme Court interprets the FCRA similarly. In *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, the Florida Supreme Court refused to interpret the FCRA to require dismissal of the FCRA claim after plaintiff filed a charge with the EEOC but was given a notice of right to sue after the 180-day deadline for filing suit set by the FCRA. 829 So. 2d 891, 897–99 (Fla. 2002). In so holding, that Court explained that it interprets the FCRA "liberally" and "in favor of a remedy for . . . victims of discrimination," and to "narrowly construe statutory provisions that restrict access to the courts."

the EEOC received the charge and request for a notice of right to sue letter around the same time, and then issued the right to sue letter less than two weeks after). Therefore, Dolch sufficiently exhausted her administrative remedies by filing a charge with the EEOC and receiving a notice of right to sue.

### 2.    Sufficiency of Discrimination Claim

To state a claim of disability discrimination, Dolch must show that "she had a disability; that she was qualified to work in her position, with or without some reasonable accommodation, despite her disability; and that she suffered an adverse employment action because of her disability." *Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 955 (11th Cir. 2017); *see Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001).

Dolch states a claim of disability discrimination under the FCRA. Dolch alleges that, because the Sixth Circuit scheduled her interview during the time of her medical appointment, she "was not promoted as a result of her handicap." Sec. Am. Compl. ¶¶ 49–55. Of course, she alleges that she withdrew her application before the intended interview date, not that the Sixth Circuit did not select her for the

position. *Id.* ¶¶ 53–54. But the crux of Dolch's theory is that the Sixth Circuit's failure to accommodate her appointment led to a promotion opportunity being foreclosed. This is sufficient to state a claim because an employer discriminates under the ADA (or FCRA) "when the employer fails to provide 'reasonable accommodations' for the disability." *See Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (quoting *Lucas*, 257 F.3d at 1255). Dolch alleges that the interviewers knew of the conflict and the reason for the conflict, yet did not reschedule the interview, Sec. Am. Compl. ¶¶ 33, 35–36, 38–39, leaving Dolch unable to compete for the promotion, thereby having a "negative effect" on her employment. *Lucas*, 257 F.3d at 1261. At this stage, that suffices to state a claim of disability discrimination.

### 3.    Sufficiency of Failure to Accommodate Claim

Pleading a failure to accommodate claim requires that the plaintiff show "that (1) she was a qualified individual with a disability; (2) she made a specific request for a reasonable accommodation; and (3) her employer . . . failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020). An accommodation qualifies as reasonable "if it enables the

employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255. The plaintiff must show that the failure to accommodate resulted in an adverse effect on the "terms, conditions, or privileges" of employment. *Beasley*, 69 F.4th at 754. The "FCRA should be construed in conformity with the American with Disabilities Act." *Smith v. Avatar Props., Inc.*, 714 So. 2d 1103, 1106 (Fla. 5th DCA 1998).

Dolch alleges two ways that the Sixth Circuit failed to accommodate her disability: the lack of a closer parking space on Thursdays and the scheduling of her interview during her scheduled transfusion. Sec. Am. Compl. ¶¶ 56-66.

Regarding the parking space on Thursdays, Dolch's allegations are insufficient because there are no allegations that "any of the terms, conditions, or privileges of [her] employment were adversely affected" by the lack of a parking space on Thursdays. *Beasley*, 69 F.4th at 756. To the extent that the failure to accommodate her parking needs resulted in a constructive discharge, she must allege as much.[3]

Separately, Dolch fails to identify specifically from whom she requested the parking accommodation. For an employer to violate the FCRA by failing to accommodate, the employee must make a "specific request" to the employer.

---

[3] To allege constructive discharge, a plaintiff must show that, objectively, working conditions were "so intolerable that a reasonable person in her position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir. 1997)).

*D'Onofrio*, 964 F.3d at 1021. Dolch alleges that she "requested an accommodation" but does not state to whom. Sec. Am. Compl. ¶ 63. This vagueness is further compounded by her later allegation that she "went to security and asked for something to be done to accommodate her." *Id.* ¶ 25.

As to the failure to accommodate her medical appointment, Dolch plausibly alleges a claim. According to her allegations, prior to the scheduling of her interview, she sent an email to the individuals conducting the interview about the time and date of her infusion, yet they scheduled the interview during the infusion. Sec. Am. Compl. ¶¶ 33, 59–61. Therefore, the Sixth Circuit was on notice of the conflict beforehand of Dolch's medical appointment, but did not accommodate it. This is sufficient to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The Sixth Circuit contends that, because Dolch withdrew her application from the promotion, she cannot now complain that the Sixth Circuit failed to accommodate her disability. MTD at 12–13. But a violation of the FCRA can arise when the employer failed to "engage in the requisite interactive process in order to identify a reasonable accommodation." *D'Onofrio*, 964 F.3d at 1021. Dolch's supervisor's response to Dolch withdrawing her application was that she should have

said something if there was a problem with the interview date, but that she did not offer Dolch an opportunity to interview at a different time. *Id.* ¶¶ 37, 39. These allegations suffice to state a claim that the Sixth Circuit's failure to accommodate effectively foreclosed Dolch's opportunity to interview for the promotion.

Accordingly, Dolch states a claim for failure to accommodate as to the Sixth Circuit's scheduling her interview during her medical appointment, but she does not state a claim regarding the failure to accommodate her parking needs.

## B. Count III: FMLA Interference

To state a claim for interference with FMLA rights, the employee must show that "(1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). An employee can receive FMLA leave to care for a family member with a serious medical condition, defined as "an illness, injury, impairment, or physical or mental condition that involves[] inpatient care[] or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The employee requesting FMLA leave need not explicitly state that she is requesting FMLA leave, but at least must "adequately convey[] to the employer sufficient information to put the employer on notice, either at the time of the request or before,

16

that his absence was potentially FMLA-qualifying." *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1384 (11th Cir. 2005). The inquiry of an FMLA interference claim is concerned with determining whether the employer "interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1); *Pereda v. Brookdale Senior Living Cmtys, Inc.*, 666 F.3d 1269, 1273–74 (11th Cir. 2012); *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018).

Dolch alleges interference with her FMLA rights. Dolch requested intermittent leave to care for her husband and father but was directed to "submit a set schedule," thereby "forc[ing] [her] to go out on full-time FMLA leave." Sec. Am. Compl. ¶ 43. In this way, the Sixth Circuit "interfere[d] with" Dolch's "attempt to exercise" her FMLA rights. 29 U.S.C. § 2615(a)(1); *Pereda,* 666 F.3d at 1273–74; *Batson*, 897 F.3d at 1331.

The Sixth Circuit argues that intermittent leave must be taken on a "reduced leave schedule," and therefore it did not interfere with Dolch's right to intermittent leave when requiring Dolch to announce that new schedule. MTD at 16–18. But leave may be taken under the FMLA "intermittently or on a reduced leave schedule," and intermittent leave and reduced leave schedules have different definitions. 29

17

C.F.R. § 825.202(a). Intermittent leave "is FMLA leave taken in separate blocks of time due to a single qualifying reason." *Id.* § 825.202(a). Reduced leave is "a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday." *Id.* Because intermittent leave and reduced schedule leave are distinct rights under the FMLA, Dolch has alleged a claim for violation of FMLA interference based on her request to use intermittent leave.

### C. Count IV: FMLA Retaliation

To state a claim of retaliation, an employee must allege that: "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001). "The adverse employment action must be material, meaning it must be one that 'could well dissuade a reasonable worker' from engaging in protected activity." *Wood v. Gilman Bldg. Prods. Inc*, 769 F. App'x 796, 802 (11th Cir. 2019) (per curiam) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "[R]eassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case." *Burlington N.*, 548 U.S. at 71.

18

Dolch has not stated a claim of retaliation under the FMLA. Although she engaged in statutorily protected activity by taking FMLA leave, her adverse employment action allegations lack factual specificity to make them plausible. *See Iqbal*, 556 U.S. at 678. She alleges that upon her return from leave, she had "significant new job duties" and her VPN accommodation was revoked. Sec. Am. Compl. ¶¶ 44, 72–73. Dolch's allegations do not suffice, particularly because whether the reassignment of job duties is adverse "depends upon the circumstances of the particular case." *Burlington N.*, 548 U.S. at 71. Further, Dolch never explains the impact that revoking her "unlimited VPN access" had on her employment. *See* Sec. Am. Compl. ¶ 73. Without more detailed allegations, she fails to allege an adverse employment action.

### D. Count V: FWA Retaliation

"The elements of a cause of action for retaliatory discharge under the [FWA] are: (1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there is some causal connection between the two events." *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015). A plaintiff must first exhaust all administrative remedies before filing a suit under the FWA. *Williams v. City of Miami*, 87 So. 3d 91, 92 (Fla.

19

3d DCA 2012) (citing § 112.3187(8)(b), Fla. Stat.). Though the FWA uses the word "may," filing a complaint per the methods described in the Act is not an optional pre-suit requirement. *Univ. of Cent. Fla. Bd. of Trs. v. Turkiewicz*, 21 So. 3d 141, 147 (Fla. 5th DCA 2009) ("[T]he [FWA] requires an aggrieved employee to seek administrative relief by filing a complaint with the FCHR prior to the filing of a civil action."); *Robinson v. Dep't of Health*, 89 So.3d 1079, 1081 (Fla. 1st DCA 2012).

Under the FWA, for an employee of a "state agency"[4] to exhaust her administrative remedies, an employee "may file a complaint . . . [that] must be made by filing a written complaint with the Office of the Chief Inspector General in the Executive Office of the Governor [CIG] or the [FCHR], no later than 60 days after the prohibited personnel action." §112.31895(1)(a), Fla. Stat.

As a threshold matter, Dolch has not exhausted her administrative remedies under the FWA. Dolch, as an employee of a state agency, was required to file a written complaint with the CIG or the FCHR within 60 days of the allegedly unlawful action. § 112.31895(1)(a), Fla. Stat. She did not do so. Dolch's allegations that she went to the Office of State Court Administrator "to discuss th[e] issue with . . . General Counsel" do not constitute a "written complaint" to either of the appropriate

---

[4] The judicial branch is considered a "state agency" under the FWA. § 112.3187(3)(b), Fla. Stat.

state entities under the FWA. Sec. Am. Compl. ¶ 47. Although Dolch alleges that she was told by the Sixth Circuit Counsel "not to involve the Inspector General," *id.* ¶ 47, Dolch has pointed to no exception for this conduct under the FWA.

Therefore, her claim for retaliation under the FWA must be dismissed.

## IV.   CONCLUSION

Dolch's allegations of violations of failure to accommodate under the FCRA (on the parking spot theory) and FMLA retaliation fail to state claims that are "plausible on [their] face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), and are therefore dismissed. Because Dolch failed to exhaust administrative remedies and she cannot now timely exhaust, her claim under the FWA is dismissed with prejudice.

Accordingly, the following is **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 39) is **GRANTED IN PART AND DENIED IN PART.**

2. Counts II, and IV are **DISMISSED WITHOUT PREJUDICE**. Count V is **DISMISSED WITH PREJUDICE.**

3. The Clerk is directed to lift the **STAY** (Doc. 17).

4.  The parties must file an amended Case Management Report no later than

   **May 20, 2025**.

**ORDERED** in Tampa, Florida, on May 6, 2025.


Kathryn Kimball Mizelle
United States District Judge